* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms in part the holding of the Deputy Commissioner, and modifies in part, by adding additional Findings of Fact and Conclusions of Law, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * * ISSUE
Whether Plaintiff is sufficiently cooperating with previously ordered medical treatment to justify reinstatement of temporary total disability benefits?
 * * * * * * * * * * * *Page 2 
Based upon the competent and credible evidence from the record herein, the Full Commission makes the following:
 RULING ON MOTION
Plaintiff's Motion to Deny Appeal, Motion for Sanctions, on the grounds that Defendants did not timely file their brief, and for the other reasons set forth in Plaintiff's Motion, is DENIED.
 * * * * * * * * * * * FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Baddour, Plaintiff was 57 years old, having been born on May 26, 1948.
2. Based on the Form 44 Application for Review, the issue to be determined is whether Plaintiff is now in compliance with the medical treatment requirements of the Full Commission's 1 October 1999, Opinion and Award.
3. The Full Commission previously found that Plaintiff sustained a compensable injury to his back on 4 October 1990, when he lifted a tarp to secure a load. The injury was admitted on a Form 21 Agreement, and as of the time of the 1 October 1999 Opinion and Award of the Full Commission, Plaintiff was receiving continuing temporary total disability compensation at the rate of $399.00 per week.
4. The Full Commission previously found that Plaintiff sought treatment from his family physician, Dr. Lawrence Hyman, for low back pain following his injury. Dr. Hyman prescribed a course of physical therapy, and subsequently referred Plaintiff to Dr. James F. Allen, a neurosurgeon. Dr. Allen first examined Plaintiff on 28 December 1990. Dr. Allen determined that there was a probable lateral disk herniation at L3-L5, and prescribed an epidural *Page 3 
steroid injection. Plaintiff showed a significant reduction of his leg pain following the injection. The Full Commission concluded that the treatment and care provided by Drs. Robert Hansen, Gilbert Snider, and Alan Towne have been of benefit to plaintiff.
5. Plaintiff has not returned to work for Defendant-Employer Moss Trucking, or any other employer since the time of his injury.
6. The Full Commission further found and concluded in the prior Opinion and Award that Plaintiff was entitled to medical compensation for the cost of treatment by Drs. Robert Hansen, Gilbert Snider, and Alan Towne, but there was no evidence that Plaintiff was entitled to medical compensation for treatment provided by any other physician he had seen after entry of the 11 February 1998 Order which designated Dr. Hansen as plaintiff's treating physician, unless he was specifically referred to that physician by Dr. Hansen for reasons related to his compensable injury.
7. In the 1 October 1999 Opinion and Award the Full Commission suspended Plaintiff's compensatory benefits from 30 November 1998, and continuing until he complied with vocational rehabilitation efforts offered by Defendants, and with the treatment of Dr. Hansen, or a physician designated by Dr. Hansen as a treating physician.
8. The North Carolina Court of Appeals of North Carolina affirmed the decision of the Full Commission on 20 February 2001.
9. This case has an extensive litigation history, much of which is set forth in the Opinion and Order of the Full Commission filed 15 November 2002, and that Order is incorporated herein by reference. Plaintiff's subsequent appeal of that Order to the North Carolina Court of Appeals was dismissed on 2 March 2004. The North Carolina Supreme Court denied Plaintiff's petition for review on 26 May 2004. *Page 4 
10. On 7 April 2005, the Full Commission entered an Order, which is incorporated herein by reference, upon Plaintiff's Form 33 Request for Hearing and Defendant's Motion to Dismiss Plaintiff's Request for Hearing. The Full Commission found that it had insufficient evidence on whether Plaintiff had complied with the Opinion and Award for the Full Commission filed 1 October 1999. The Full Commission granted Plaintiff's request for a hearing and remanded the matter to the Deputy Commissioner section for a hearing "regarding the issue of [P]laintiff's compliance with medical treatment as it relates to the possible reinstatement of [P]laintiff's benefits."
11. From the Opinion and Award of Deputy Commissioner Baddour entered 31 December 2006 reinstating benefits, Defendants gave notice of appeal to the Full Commission on 10 January 2007.
12. In the proceedings that resulted in the 1 October 1999 Opinion and Award by the Full Commission, the parties stipulated to the following: "This is a compensable injury and a Form 21 was approved by the North Carolina Industrial Commission on 11 March 1991."
13. In the 15 November 2002 Order of the Full Commission, in Finding of Fact Number eight (8), the Full Commission found that the Full Commission Opinion and Award filed 1 October 1999 provided in the Conclusions of Law that, "[t]he suspension of Plaintiff's benefits shall continue until, in the opinion of the Executive Secretary, Tracey Weaver, [P]laintiff's refusal to comply with vocational efforts and with the treatment of Dr. Hansen has ceased." The Commission further stated that, "[a]ccordingly, the [P]laintiff is not barred from pursuing a reinstatement of his benefits by showing that his failure to comply has ceased." Plaintiff's claim was denied because he sought to re-litigate previously determined issues, rather *Page 5 
than present evidence on whether he had complied with the 1 October 1999 Opinion and Award of the Full Commission.
14. After seeing Dr. Hansen on 14 February 2005, plaintiff sent a letter to Executive Secretary Tracey Weaver on 18 February 2005, (which is treated as a Motion and admitted into evidence herein) attaching medical documentation of his office visit to Dr. Hansen and copies of Dr. Hansen's referrals. Plaintiff also included a request for an evidentiary hearing. Defendants' response letter, dated 22 February 2005, which is treated (by request of Defendants) as a Motion to Dismiss, is also admitted into evidence.
15. Although Plaintiff sought a ruling from the Executive Secretary pursuant to the 1 October 1999 Opinion and Award of the Full Commission, the matter was referred to the Full Commission, and resulted in the 7 April 2005 Commission Order remanding the matter to a Deputy Commissioner for an evidentiary hearing on whether Plaintiff had complied with the medical treatment of Dr. Hansen.
16. At the hearing before Deputy Commissioner Baddour, it was Defendants' position that until Plaintiff is in compliance with medical treatment, they are unable to offer him vocational rehabilitation.
17. Plaintiff testified at the hearing on 14 June 2005 that when he initially decided to return to Dr. Hansen to comply with the Order of the Full Commission, he was not able to get an appointment without a referral. Plaintiff further testified that when he saw Dr. Hansen on 14 February 2005, he informed him that he had been ordered by the Commission to return to him for medical treatment, and that the Commission had not approved Dr. Hyman or Dr. Towne.
18. On 14 February 2005, Dr. Hansen prepared a detailed "Office Note," which included the following excerpt: *Page 6 
 This is, therefore, to reassert that at the time we initiated our care with Mr. Sykes, he was under the care of Dr. Alan Towne and Dr. Ross Bullock. Dr. Bullock has referred Mr. Sykes for further back care and to Dr. Towne for chronic pain management. Mr. Sykes continues to see Dr. Towne on a regular basis for chronic pain management. It is my feeling that Mr. Sykes has legitimate, chronic, and ongoing pain from failed back surgery. This is extremely well documented in our office records. He continues under the care of Dr. Allen Towne at MCV [Medical College in Virginia]. I find this entirely appropriate. These names were mentioned in our prior charts and I have no difficulty recommending ongoing care with them. I believe it was appropriate then and continues to be appropriate now.
19. In a "To Whom It May Concern" letter dated 16 May 2005, Dr. Hansen wrote to clarify his previous "Office Note," the following:
 It is my understanding that there was some issue regarding the nature of my referrals for ongoing care. As is stipulated in my 02-14-05 note; at the time Mr. Sykes was being seen, I thought it appropriate for him to continue under treatment of Dr. Alan Towne and physicians that he recommended. It is my opinion, therefore, that he should continue to follow-up with Dr. Towne, Dr. Bullock, and Dr. Hyman as necessary to treat his chronic medical problems. Again, this is spelled out in my communication from 02-14-05. I am not sure why any confusion lingers regarding this point.
20. Defendants deposed Dr. Robert B. Hansen on 18 July 2005. Dr. Hansen is a neurologist with a specialty certification in pain medicine and neurophysiology. Dr. Hansen acknowledged that Plaintiff was under treatment with other doctors at Medical College in Virginia, and expressed a desire to continue treatment with those doctors. He also testified that he was willing to continue treating Plaintiff. Dr. Hansen does "interventional pain management," which includes injections and medication. He also explained his 1998 referrals, which have been the subject of prior binding decisions of the Industrial Commission and the North Carolina Court of Appeals. *Page 7 
21. According to his testimony, on 14 February 2005, Dr. Hansen gave Plaintiff written referrals to Dr. Alan Towne for chronic pain management, Dr. Lawrence Hyman for general medicine, and Dr. Bullock for spine care, if needed. Dr. Hansen testified that he referred Plaintiff to the doctors at the Medical College of Virginia because:
 I always think it's best for people to stay with who was taking care of you, so I said that's an appropriate place to go, those are appropriate physicians to seek. You [Mr. Sykes] requested that I stipulate that in a referral, and I, in fact, wrote out on my prescription pad and said the patient is referred to these physicians. In fact, you're [Mr. Sykes] already seeing those physicians. But I went ahead and did that as a referral so that it would be indicated that I thought that was appropriate for your management.
22. In response to further questioning, Dr. Hansen agreed that it is his medical opinion that Plaintiff should continue to follow up with Dr. Towne, Dr. Bullock, and Dr. Hyman as necessary for the treatment of his chronic back problems.
23. Plaintiff has established by the greater weight of the evidence, and the Commission so finds as fact, that he is in compliance with the treatment recommendations of Dr. Hansen. Plaintiff returned to Dr. Hansen, his authorized treating physician, on 14 February 2005, and is complying with the recommendations and referrals of Dr. Hansen. Plaintiff, therefore, contends that his benefits should be reinstated. Defendants contend that Plaintiff's visit to Dr. Hansen was clearly pre-textual, and was designed only to obtain referrals to Drs. Towne and Hyman, and that this does not constitute compliance with medical treatment. The Full Commission finds Defendants' argument unpersuasive, and further finds as fact that Plaintiff has made good faith efforts to comply with the 1 October 1999 Opinion and Award of the Full Commission.
24. Until Defendants offer vocational rehabilitation services to Plaintiff, he cannot demonstrate his willingness to cooperate. Defendants have had sufficient opportunity to offer *Page 8 
vocational rehabilitation services to Plaintiff since he returned to Dr. Hansen on 14 February 2005, and at least after the Opinion and Award of Deputy Commissioner Baddour filed 31 December 2006.
25. Since Plaintiff is in compliance with the 1 October 1999 Opinion and Award of the Full Commission, and since Defendants have not offered vocational rehabilitation services, Defendants are obligated to reinstate temporary total disability and medical compensation to the Plaintiff as of 31 December 2006, when Deputy Commissioner Baddour entered his Opinion and Award.
26. The Full Commission shall retain jurisdiction over this matter to monitor Plaintiff's cooperation with vocational rehabilitation, if it is offered by Defendants.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. "The refusal of the employee to accept any medical, hospital, surgical or other treatment or rehabilitative procedure when ordered by the Industrial Commission shall bar said employee from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Industrial Commission the circumstances justified the refusal, in which case, the Industrial Commission may order a change in the medical or hospital service." N.C. Gen. Stat. § 97-25.
2. Plaintiff has made a good faith effort to comply with, and has complied with, that portion of the Full Commission Opinion and Award dated 1 October 1999 ordering him to comply with the treatment of Dr. Hansen. N.C. Gen. Stat. § 97-25. *Page 9 
3. Although the Full Commission's 7 April 2005 Order remanding this case to the Deputy Commissioner section for hearing only dealt with "the issue of [P]laintiff's compliance with medical treatment as it relates to the possible reinstatement of [P]laintiff's benefits," Defendants have admitted through counsel that they have not and are unwilling to offer vocational rehabilitation services to Plaintiff because they contend he is not in compliance with the medical treatment ordered in the 1 October 1999 Opinion and Award. Defendants have had a Deputy Commissioner opinion since 31 December 2006 ruling that Plaintiff has complied with the medical treatment ordered. Plaintiff cannot further comply with the 1 October 1999 order of the Full Commission ordering him to cooperate with vocational rehabilitation until Defendants offer it. Any failure of Plaintiff to cooperate with vocational rehabilitation services under the circumstances is justified. N.C. Gen. Stat. § 97-25.
4. Accordingly, Defendants shall reinstate temporary total disability benefits and medical compensation benefits to Plaintiff as of 31 December 2006. N.C. Gen. Stat. §§ 97-29; 97-25.
5. The Full Commission shall retain jurisdiction over this matter to monitor Plaintiff's cooperation with vocational rehabilitation, if it is offered by Defendants.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD 1. Plaintiff's claim for reinstatement of compensation is GRANTED. *Page 10 
2. Defendants shall reinstate temporary total disability benefits and medical compensation benefits to Plaintiff at the rate of $399.00 per week as of 31 December 2006 payable pursuant to the Form 21 Agreement herein.
3. The Full Commission shall retain jurisdiction over this matter to monitor Plaintiff's cooperation with vocational rehabilitation, if it is offered by Defendants.
4. Defendants shall pay the costs.
This the __ day of April 2008.
S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________________ DANNY LEE McDONALD COMMISSIONER
DISSENTING:
 S/_____________________ DIANNE C. SELLERS COMMISSIONER *Page 11